IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| WILLIE BLAND, | * | |
| Petitioner, | * | |
| v. | * | Civil Action No. GLR-23-3367 |
| S. CARTER, Warden, | * | |
| | * | |
| Respondent. | | |

***

**MEMORANDUM OPINION**

THIS MATTER is before the Court on self-represented Petitioner Willie Bland's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (ECF No. 1) and Motion to Compel Judgment (ECF No. 18). The Petition and Motion are ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2025). For the reasons below, the Court will grant the Motion and deny the Petition.

## I. BACKGROUND

On June 7, 2022, Bland was sentenced to ninety-six months' imprisonment for federal drug convictions and violations of supervised release. (Pet. Writ Habeas Corpus ["Pet."] at 2, ECF No. 1; Shaw Decl. ¶ 5, ECF No. 6-1).[1] He is currently serving his sentence at the Federal Correctional Institution in Cumberland ("FCI-Cumberland"). (See

[1] Unless otherwise noted, citations to the page numbers refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

Shaw Decl. at 13). Bland's sentence commenced on June 7, 2022, and his projected release date is March 16, 2027. (Id. ¶ 6).

On July 12, 2022, the Bureau of Prisons ("BOP") determined that Bland was eligible to earn credits under the First Step Act of 2018 ("FSA") based on the nature of his offenses. (Id. ¶ 7). The BOP, however, assessed Bland's risk of recidivism using the Prisoner Assessment Tool Targeting Estimated Risk and Needs ("PATTERN") and determined that he presented a high risk of recidivism. (Id. at ¶ 8). As a result, Bland did not receive any credits that he earned under the FSA. (Id. ¶¶ 10–13; Answer at 1, ECF No. 6).

Bland filed a request for administrative remedy on May 2, 2023, asking the warden to apply FSA time credits to his sentence. (Shaw Decl. ¶ 10; see also id. at 27). The warden denied his request because Bland had been found guilty of a prohibited act, namely, possessing a dangerous weapon. (Id. ¶ 11; see also id. at 29). Bland appealed the warden's denial to the Regional Director for the Mid-Atlantic Region but was unsuccessful. (Id. ¶ 12). Bland appealed again to the Regional Director to the Bureau's Central Office. (Id. ¶ 13). The Regional Director denied Bland's appeal, explaining that "only inmates with low or minimum recidivism scores may have the [FSA] credit applied" and that his "current PATTERN score of HIGH precludes the application of" Federal Time Credits under the FSA. (Admin. Appeal Denial at 1, ECF No. 1-3). The Regional Director further advised Bland that he has "earned 110 days of [Federal Time Credits] that can be applied towards early release if [his] PATTERN score drops to LOW or MIN." (Id.).

On December 8, 2023, Bland filed a Petition for Writ of Habeas Corpus, challenging the BOP's decision not to apply his FSA credits to his sentence. (Pet. at 7). Bland does not

contest his high-risk PATTERN score, (Pet'r Resp. Resp't Dismissal ["Reply"] at 3, ECF No. 7); rather, he argues that the "FSA has no provision preventing medium or high security prisoners from receiving credits,"[2] (Mem. Supp. Pet. Writ Habeas Corpus at 2, ECF No. 1-1). As relief, Bland asks that the Court order the BOP to apply 365 days of time credits to his projected release date. (Pet. at 7).

Respondent S. Carter, Warden of FCI-Cumberland, filed an Answer to Bland's Petition on February 27, 2024, (ECF No. 6), and Bland filed a Reply on March 20, 2024, (ECF No. 7). On September 3, 2025, Bland filed a Motion to Amend and Supplement Pleadings, (ECF No. 9), which the Court construed as a Supplement to his Reply, (Dec. 5, 2024 Order at 3, ECF No. 10). The Court then ordered Carter to file a supplement to her Answer, explaining whether the interceding case, <u>Loper Bright Enterprises v. Raimondo</u>, 144 S.Ct. 2244 (2024), affects her response to the Petition. (Dec. 5, 2024 Order at 2–3). Carter filed a Supplement, docketed as a Response in Opposition to Bland's Motion to Amend, on December 20, 2024. (ECF No. 11). On January 8, 2026, Bland filed a Motion to Compel Judgment. (ECF No. 18). To date, Carter has not filed a response to that Motion.

## II. DISCUSSION

### A. <u>Standard of Review</u>

Only the Attorney General, acting through the BOP, may administer a federal inmate's sentence. <u>See</u> 18 U.S.C. § 3621; <u>United States v. Wilson</u>, 503 U.S. 329, 335

[2] Respondent presumes, and the Court agrees, that Bland is referring to his recidivism risk under the PATTERN recidivism risk tool rather than his security classification. (Resp't's Reply Pet.'s Suppl. Opp'n at 2 n.2, ECF No. 11).

(1992). This includes determining where an inmate serves his sentence as well as time credits. See 18 U.S.C. § 3621(b); Wilson, 503 U.S. at 335. "A claim for credit against a sentence attacks the computation and execution of the sentence rather than the sentence itself." United States v. Miller, 871 F.2d 488, 490 (4th Cir. 1989). Thus, such challenges must be brought in a petition for habeas corpus relief under 28 U.S.C. § 2241 in the prisoner's district of confinement. Id.; Fontanez v. O'Brien, 807 F.3d 84, 87 (4th Cir. 2015) (recognizing that "attacks on the execution of a sentence are properly raised in a § 2241 petition" (quoting In re Vial, 115 F.3d 1192, 1194 n.5 (4th Cir. 1997))).

## B. Analysis

Bland filed the pending Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, seeking application of time credits that he has earned under the FSA. (Pet. at 7). The Court will first discuss the FSA briefly and then review the BOP's decision not to apply Bland's FSA credits to his sentence.

### 1. The First Step Act

The FSA, enacted on December 21, 2018, governs the calculation of federal prison sentences. See 18 U.S.C. § 3632. The FSA allows federal inmates to earn additional good time credits at a maximum of fifty-four days per year of their imposed sentence. 18 U.S.C. § 3624(b); see also Pizarro v. White, 2019 WL 1922437, at *1 (M.D.Pa. Apr. 30, 2019). The FSA also allows federal inmates to earn early release credits for participation in certain programming. 18 U.S.C. § 3632(d)(4)(A); see also Torok v. Beard, No. PX-21-1864, 2022 WL 2703836, at *1 (D.Md. July 12, 2022); Llufrio v. Johns, No. 5:19-CV-122, 2020 WL

5248556, at *2 (S.D.Ga. Aug. 13, 2020). Specifically, the FSA allows eligible inmates[3] who successfully complete evidence-based recidivism reduction ("EBRR") programs or productive activities ("PAs") to receive earned time credits to be applied toward time in prerelease custody or supervised release. 18 U.S.C. §§ 3632(d)(4)(A), (C).[4] An inmate may earn ten days of credit for every thirty days of successful participation in EBRRs or PAs. Id. § 3632(d)(4)(A)(i). Additionally, eligible inmates who have been assessed at a minimum or low risk of recidivism and maintain their low risk of recidivism over two consecutive assessments may earn an additional five days of time credit for every thirty days of successful participation. Id. § 3632(d)(4)(A)(ii).

The FSA charged the Attorney General with developing and releasing a Risk and Needs Assessment System (the "System") to: (1) determine an inmate's risk of recidivism; (2) assess an inmate's risk of violence or serious misconduct; (3) determine the type and amount of EBRR programs appropriate for each inmate; (4) periodically assess an inmate's recidivism risk; (5) reassign an inmate to appropriate EBRR programs and PAs as needed; (6) determine when to provide incentives and rewards for successful participation in EBRR programs and PAs; and (7) determine when the inmate is ready to transfer to prerelease custody or supervised release. See id. § 3632(a). Further, "[t]he System provides guidance on the type, amount, and intensity of EBRR programs and PAs to be assigned to each

[3] To be eligible to receive earned time credits, an inmate must not have a conviction for a disqualifying offense and must not be a deportable non-U.S. citizen. See 18 U.S.C. §§ 3632(d)(4)(D)–(E).

[4] 18 U.S.C. § = 2624(g) sets forth the parameters for a prisoner's eligibility for and transfer to prerelease custody and early supervised release, as directed under the FSA. See 18 U.S.C. § 3632(4)(C).

inmate based on the inmate's specific criminogenic needs." Kurti v. White, No. 1:19-cv-2109, 2020 WL 2063871, at *4 (M.D.Pa. Apr. 29, 2020) (citing 18 U.S.C. § 3632(b)).

In accordance with the FSA, the BOP implemented the PATTERN system to identify each inmate's needs and risk profile related to possible recidivism.[5] Each level of recidivism risk is assigned a range of points depending on gender and whether the inmate was convicted of a violent offense.[6] PATTERN considers both static and dynamic factors, including: the inmate's age at the time of the assessment; any infractions during the inmate's current incarceration, including serious or violent infractions; whether the inmate is free of any infractions or serious and violent infractions; completion of educational- or work-related programming; whether the inmate received drug treatment while incarcerated; non-compliance with any financial responsibilities; whether the inmate is currently incarcerated for a violent offence or is a sex offender; the inmate's criminal history score; any history of violence or escapes; and the inmate's education score.[7] Based on this information, PATTERN assigns one of four "risk of recidivism" scores: minimum, low, medium, or high.[8]

---

[5] See generally BOP, The First Step Act of 2018: Risk and Needs Assessment System—UPDATE, https://www.bop.gov/inmates/fsa/docs/the-first-step-act-of-2018-risk-and-needs-assessment-system-updated.pdf (Jan. 2020).

[6] See id. at 37–39.

[7] See U.S. Dep't of Justice, 2020 Review and Revalidation of the First Step Act Risk Assessment Tool 12–13, https://www.ojp.gov/pdffiles1/nij/256084.pdf (Jan. 2021).

[8] Id. at 16; see also Male Pattern Risk Scoring, https://www.bop.gov/inmates/fsa/docs/male_pattern_form.pdf (last visited Sep. 8, 2026).

**2. Application of Bland's FSA Credits**

Here, the Parties agree that Bland is eligible to earn, and has in fact earned, FSA time credits. (Pet. at 7; Admin. Appeal Denial at 1; Answer at 6; Shaw Decl. ¶ 7). The disagreement lies in whether those credits should be applied to Bland's sentence. Bland argues that the credits he has earned should be applied to his sentence, notwithstanding his high risk of recidivism. (Pet. at 7; Mem. Supp. Pet. Writ Habeas Corpus at 2). Carter argues the opposite, stating that "only those inmates with low and minimum recidivism scores are able to have their earned time credits applied toward prerelease custody or supervised release." (Answer at 7). Citing to Loper Bright, Bland argues in his Supplemental Reply that the BOP has interpreted the FSA incorrectly as requiring an inmate to have a low or minimum recidivism risk to receive their earned credits. (Suppl. Reply at 4–5, ECF No. 9). Carter contends that Loper Bright does not apply because the FSA "explicitly prohibits the BOP from applying FSA time credits . . . unless an inmate has a minimum or low-risk recidivism level under PATTERN." (Resp't's Reply Pet'r's Suppl. Opp'n at 1–2, ECF No. 11). For the reasons below, the Court agrees with Carter.

Prior to Loper Bright, courts were required to give "substantial deference" to administrative agencies' interpretations of statutes that Congress had entrusted those agencies to administer by regulation. Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 843–44 (1984). When a statute was ambiguous, the Court's role was to examine whether the agency's implementation of the statute through regulation was reasonable. Id. at 843. In Loper Bright, the Supreme Court overturned Chevron such that, under the Administrative Procedure Act, courts may not defer to an agency's interpretation

of the law simply because a statute is ambiguous. 603 U.S. at 391–94. Instead, "[c]ourts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority . . . ." Id. at 412.

Here, the FSA is not ambiguous as to the application of time credits for inmates with a high risk of recidivism—it mandates that only inmates with low and minimum recidivism scores are eligible to have earned time credits under the FSA applied toward prerelease custody or supervised release. See 18 U.S.C. §§ 3624(g)(1)(B), (D)(i)(I), (D)(ii). Specifically, the statute provides that eligibility for application of credits is confined to a prisoner who:

> (B) has shown through the periodic risk reassessments a demonstrated recidivism risk reduction or has maintained a minimum or low recidivism risk, during the prisoner's term of imprisonment;
>
> . . . .
>
> (D)(i) in the case of a prisoner being placed in prerelease custody, the prisoner—
>
> (I) has been determined under [PATTERN] to be a minimum or low risk to recidivate pursuant to the last 2 reassessments of the prisoner; or
>
> . . . .
>
> (D)(ii) in the case of a prisoner being placed in supervised release, the prisoner has been determined under [PATTERN] to be a minimum or low risk to recidivate pursuant to the last reassessment of the prisoner.

Id. §§ 3624(g)(1)(B), (D)(i)(I), (D)(ii) (emphasis added). Contrary to Bland's contention, (see Pet. at 7), the statute specifically and unambiguously limits application of credits to those inmates who have achieved a low or minimum risk of recidivism, see 18 U.S.C.

§§ 3624(g)(1)(B), (D)(i)(I), (D)(ii). There is no dispute that Bland's PATTERN score places him at a high risk of recidivism. (Reply at 3; Answer at 6). Therefore, the BOP properly denied application of credits under the FSA and, because the statute is unambiguous on this issue, Loper Bright does not change the analysis.

In his Reply, Bland asserts that the "BOP has clearly failed to maintain and conform to its statutory duty" because the PATTERN scores "never seem to change no matter how [much] programming a[n] inmate do[es]." (Reply at 4). Bland states, without support or explanation, that he has no opportunity to reduce his risk level. (Id.). To the extent that Bland challenges the manner in which the BOP has implemented the FSA via its PATTERN tool, such an argument fails. The BOP's System, including PATTERN, is consistent with the statutory requirement that the Attorney General develop a "risk and needs assessment system" that will "determine the recidivism risk of each prisoner" and "classify each prisoner as having minimum, low, medium, or high risk for recidivism." 18 U.S.C. § 3632(a). Bland makes no substantive argument that the assessment itself, or as applied to him, is arbitrary, capricious, an abuse of discretion, contrary to law, or outside the BOP's statutory authority.[9] See 5 U.S.C. §§ 706(2)(A), (C).

Additionally, although Bland has a high PATTERN score, he may still seek application of his earned FSA credits. Under 18 U.S.C. § 3624, a prisoner may petition the warden of their institution to be transferred to prerelease custody or supervised release if

---

[9] Additionally, it appears that Bland's high risk of recidivism is largely related to his having forty criminal history points, which cannot change. (See Shaw Decl. at 15, ECF No. 6-1).

the warden finds that the prisoner (1) would not be a danger to society if transferred, (2) has made "a good faith effort to reduce their recidivism risk" by participating in available programs, and (3) is unlikely to recidivate. 18 U.S.C. § 3624(g)(1)(D)(i)(II). BOP Program Statement 5410.01 allows an inmate to file such a petition by submitting a BP-A0148 Inmate Request to Staff during their Program Review. (Answer at 6 (citing BOP Program Statement 5410.01 CN-2)). The BOP has no record of Bland filing a BP-A1048 form for the warden's review. (Shaw Decl. ¶ 14). Having a high-risk PATTERN score and not having sought or received the warden's approval for transfer to prerelease custody or supervised release despite his score, Bland is not entitled to application of his earned time credits nor transfer to prerelease custody.

The BOP made a specific determination within its discretion, using the PATTERN system, regarding Bland's ability to have his earned time credits applied to his sentence. The BOP's determination is consistent with the FSA. Therefore, Bland's Petition must be denied. Having ruled on the Petition, the Court will grant Bland's Motion to Compel Judgment (ECF No. 18).

## III. CONCLUSION

For the reasons stated above, the Petition for Writ of Habeas Corpus (ECF No. 1) will be denied. A separate Order follows.

Entered this 9th day of September, 2026.

/s/

George L. Russell III
Chief United States District Judge